IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RICKY A. JONES                                                     PLAINTIFF

v.                      Civil No. 6:18-cv-06030

WARDEN N. FAUST, Ouachita River
Correctional Unit ("ORCU"); RORY
GRIFFIN, Deputy Director of Health Services
Administration, Correct Care Solutions (CCS);
DR. NANNETTE VOWELL, CCS; R. MORGAN,
CCS; GWENDOLYN HART, CCS; NURSE C.
ROBINSON; and JOHN or JANE DOE EYE DOCTOR        DEFENDANTS

## ORDER

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Ouachita River Correctional Unit of the Arkansas Department of Correction ("ADC").

Before the Court is a Motion for Summary Judgment filed by Separate Defendants Warden Faust and Rory Griffin. (ECF No. 29). The Motion is limited to the issue of exhaustion of administrative remedies. Plaintiff has responded to the Motion. (ECF No. 49). The Court finds this matter ripe for consideration.

### I. BACKGROUND

Plaintiff filed this action on March 29, 2018. With the exception of Warden Faust, Plaintiff alleges Defendants are either current or former employees of Correct Care Solutions (CCS), the contract medical care provider for the ADC.

Plaintiff has Marfan disease.[1] Prior to his incarceration at the ADC, Plaintiff had been medically treated with contact lenses. When Plaintiff was processed into the ADC, his contact lenses were taken and he was told he would be accommodated with eye glasses. With few exceptions, inmates in the ADC are not allowed to wear contact lenses.

Plaintiff alleges Defendants exhibited deliberate indifference to his serious medical needs when they failed to provide him with his medically prescribed eye wear. On August 27, 2015, Plaintiff alleges he was seen by Dr. Perin and Dr. Uwaydat of the Jones Eye Institute. According to Plaintiff, Dr. Uwaydat recommended that Plaintiff be provided with contact lenses to treat his Marfan disease. Further, Plaintiff maintains that Dr. Uwaydat indicated that glasses would do nothing for Plaintiff's eyesight and if he did not get the contact lenses he was at risk of going blind. Dr. Uwaydat's recommendation had to be approved by the ADC.

As a result of not receiving the contacts for over two years, Plaintiff alleges he suffered physical injury when he developed glaucoma and spontaneous subluxation of both lenses. Plaintiff underwent the surgical removal of his left and right lenses on January 12, 2017, and March 30, 2017, respectively.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden

---

[1] Marfan disease or Marfan syndrome is a connective tissue multisystemic disorder which, among other things, can cause ectopia lentis, the displacement of the lens of the eye. *Marfan Syndrome Definition*, MEDILEXICON.COM, https://www.medilexicon.com/dictionary/88514 (last visited July 16, 2018); *Ectopia Lentis Definition*, MEDILEXICON.COM, https://www.medilexicon.com/dictionary/27837 (last visited July 16, 2018).

2

rests with the nonmoving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." (*Id.*) (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Separate Defendants Faust and Griffin maintain that Plaintiff has not exhausted his administrative remedies in regard to his claims against them. Specifically, they state Plaintiff did not name either of them in any grievance regarding his claim of deliberate indifference to his vision care and that Plaintiff failed to follow the ADC's grievance procedures. As such, they maintain all claims against them must be dismissed.

The Prison Litigation Reform Act ("PLRA") provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

3

In *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *See also Woodford v. Ngo*, 548 U.S. at 90 ("[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly*"). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 599 U.S. at 218. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

The ADC has an established grievance procedure, set forth in Administrative Directive ("D") 14-16, for inmates to utilize when they believe their constitutional rights have been violated. (ECF No. 31-1). Only one problem or issue is to be stated in a grievance. (*Id.* at 5) (AD 14-16 §(IV)(D)(2)). The inmate is advised that he "must use a separate form for each issue." (*Id.*) If more than one problem or issue is included in the grievance, only the first problem or issue will be addressed. (*Id.*) The inmate is specifically advised that "[a]dditional problems/issues contained in the grievance will not be considered exhausted." (*Id.*)

Step One is the Informal Resolution Procedure. At Step One, the inmate is required to complete and submit a Unit Level grievance form within fifteen days of the incident. (ECF No. 31-1 at 5) (AD 14-16 § (IV)(E)(1)). The inmate is advised that "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC." (*Id.*) at 4 (AD 14-16 § (IV)(C)(4)). The inmate is also required to be specific as to the substance of the issue and include the "date, place, personnel involved or witnesses." (ECF No.

31-1 at 5-6) (AD 14-16 § (IV)(E)(2)). Grievances regarding medical issues are forwarded to the Health Services Administrator. (*Id.* at 6) (AD 14-16 §(IV)(E)(4)(c)).

If the inmate is dissatisfied with the Unit Level grievance decision, an inmate proceeds to Step Two which is the Formal Grievance Procedure. (ECF No. 31-1 at 8) (AD 14-16 § (IV)(F)). At this step, the inmate files a Formal Grievance on the same unit level grievance form and deposits it in the designated grievance box. (*Id*). An inmate has three working days from the receipt of the Unit Level grievance decision to submit his Formal Grievance. The Warden or Warden's designee, is to respond within twenty (20) working days. (*Id.* at 10) (AD 14-16 § (IV)(F)(7)).

If dissatisfied with the Formal Grievance decision, the inmate has five days to appeal to the Chief Deputy/Deputy/Assistant Director. (ECF No. 31-1 at 11) (AD 14-16 § (IV)(G)). If the inmate receives no response after the expiration of the twenty days, he must promptly appeal. (*Id.* at 10) (AD 14-16 § (IV)(F)(8)). An appeal response must be issued within thirty working days unless there is an extension. (*Id.* at 12) (AD 14-15 § (IV)(G)(6)). "A written decision or rejection of an appeal at this level is the end of the grievance process." (*Id*).

Inmates are told they must fully exhaust. Specifically, the policy states: "Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a section 1983 lawsuit. . . . If this is not done, their lawsuits or claims may be dismissed immediately." (ECF No. 31-1 at 17) (AD 14-16 § (IV)(N)).

During the relevant time period, Plaintiff filed ten grievances regarding his medical care. However, Plaintiff did not name Defendant Faust in any of these grievances and did not mention Defendant Griffin in eight of the ten grievances. In the two grievances in which Plaintiff mentioned Defendant Griffin one simply mentioned that Defendant Griffin had stated that Plaintiff could be issued contact lenses because of his medical condition and the other covered multiple issues so

that the allegations against Defendant Griffin were not addressed pursuant to ADC policy allowing only one issue per grievance.

Plaintiff points to no other grievances. Instead, Plaintiff argues that Defendant Griffin has been aware of his vision problems since he submitted his first grievance on June 30, 2015. Plaintiff maintains he was approved for contacts on August 27, 2015, and still has not received the contacts or any glasses. Further, Plaintiff asserts that Defendant Griffin is involved in "this claim because he has answered the grievances." With respect to Defendant Faust, Plaintiff asserts that as Warden she is supposed to "answer every grievance" and be "aware of every problem that occurs in her unit."

The issue before the Court is not whether Defendants Griffin and Faust may have been aware of Plaintiff's vision problems. Instead, the sole issue is whether Plaintiff complied with the requirements of the ADC's grievance procedure with respect to these Defendants. The grievance procedure clearly requires him to name each Defendant involved and limits him to one issue per grievance. Accordingly, it is evident that Plaintiff did not comply with the grievance procedure with respect to Defendants Faust and Griffin.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (ECF No. 29) filed by Separate Defendants Faust and Griffin should be and hereby is **GRANTED** and the claims against them are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**, this 13th day of August, 2018.

    /s/ Susan O. Hickey
    Susan O. Hickey
    United States District Judge