IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


RICKY A. JONES                                                    PLAINTIFF

v.                              Civil No. 6:18-cv-06030

DR. NANNETTE VOWELL; RICHARD
MORGAN; GWENDOLYN HART; and
NURSE C. ROBINSON                                                DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This is a civil rights action filed by Plaintiff Ricky A. Jones pursuant to 42 U.S.C. § 1983.

Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is incarcerated in the Arkansas Department of Correction ("ADC"). He maintains

his constitutional rights were denied by the failure of Defendants to provide him with contact

lenses and/or glasses for treatment of Marfan Syndrome ("MFS"). [1] Plaintiff has named Dr.

Nannette Vowell, Richard Morgan, Nurse Gwendolyn Hart, and Nurse C. Robinson as defendants.

He sues Defendants in both their individual and official capacities.

The case is before the Court on Defendants' Motion for Partial Summary Judgment. (ECF

No. 57).   Plaintiff did not file a response to the Motion and the time to do so has passed.

### BACKGROUND

When Plaintiff was processed into the ADC, his medically prescribed contact lenses were

confiscated. [2] Plaintiff indicates he was informed that contact lenses were forbidden and that he

would be provided with eye glasses. However, he was given neither for a period of approximately

---

[1] Marfan syndrome is a connective tissue multisystemic disorder which, among other things, can cause ectopia lentis, the displacement of the lens of the eye. *Marfan Syndrome Definition*, MEDILEXICON.COM, https://www.medilexicon.com/dictionary/88514 (last visited January 30, 2019); *Ectopia Lentis Definition*, MEDILEXICON.COM, https://www.medilexicon.com/dictionary/27837 (last visited January 30, 2019).
[2] Physicians at the Jones Eye Institute ("JEI") had prescribed the eye wear to treat Plaintiff's issues resulting from MFS.

two years. Plaintiff maintains Defendants were deliberately indifferent to his serious medical need for eye wear in their continuing and ongoing failure to provide him with his prescribed contact lenses or eye glasses. According to Plaintiff, the delay caused him to develop glaucoma in both eyes and required him to have surgery on both eyes.

Plaintiff states that on December 8, 2014, he was given an eye exam by Nurse Hart at the Ouachita River Correctional Unit ("ORCU"). Nurse Hart noted that Plaintiff's vision was impaired, he was supposed to wear contact lenses, did not have eye glasses, and could hardly see to sign his name. Although he filled out sick call slips, Plaintiff maintains that no attempt was made to accommodate him by providing contact lenses or eye glasses.

On his second visit to the infirmary Plaintiff was seen by Dr. Vowell. Dr. Vowell issued Plaintiff a walking cane and advised him that he would be seen by someone else soon regarding his eye issues. Plaintiff was subsequently seen at the JEI by Dr. Uwaydat on August 27, 2015. Plaintiff indicates Dr. Uwaydat stated that eye glasses would do him no good and that if the ADC did not provide him with eye care he was in danger of going blind. Dr. Uwaydat prescribed Plaintiff contact lenses and Dr. Salter, another physician at the JEI, approved Plaintiff for contact lenses. However, Plaintiff maintains that Dr. Vowell failed to provide the contact lenses.

Plaintiff submitted a grievance about the continuing delay and denial of eye care. Defendant Morgan responded that the prescribed contact lenses were not allowed in prison. Further, Defendant Morgan noted that Plaintiff had another appointment at JEI. Plaintiff notes that the ADC policy regarding contact lenses does not restrict inmates with certain eye conditions from having contact lenses. (ECF No. 1 at 18). Further, the policy states that "[i]nmates arriving at ADC with prescriptive lenses but no other prescriptive eyeglasses may retain and use the contact lenses until eyeglasses are provided by the medical department, and contact lens solution will be provided

by the medical department until ADC compliant prescription eyewear is issued." (*Id*). On January 12, 2017, the lens from his left eye was removed. On March 30, 2017, the lens from his right eye was surgically removed.

The present lawsuit concerns four grievances: OR-15-00397, OR-17-00592, OR-17-00976, and OR-16-01367.

## LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

Defendants assert they are entitled to summary judgment, in part, because Plaintiff failed to exhaust his administrative remedies as to a number of claims set forth in one of his grievances. Further, they assert that Plaintiff's claims and/or recovery of damages should be limited to a period beginning fifteen days prior to the date he filed the grievances.

### A. Failure to Exhaust Administrative Remedies

As amended by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[E]xhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." *Walker v. Maschner*, 270 F.3d 573, 577 (8th Cir. 2001). "[E]xhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones v. Bock*, 549 U.S. 199, 219 (2007). " [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"[T]he PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012). This is

true "even if the decisionmaker could have declined to reach the merits because of one or more procedural deficiencies. A complete administrative record exists, and a reviewing court will have the benefit of the agency's institutional perspective." *Id.* at 947-48.

The ADC's grievance procedure is set forth in Administrative Directive 14-16. (ECF No. 58-1 at 1). The first step is an informal resolution which allows "staff the opportunity to resolve an issue on an informal basis; and to serve as a prerequisite to the second step, a formal grievance." (*Id.* at 1-2). The grievance is to be submitted on a Unit Level Grievance Form. The grievance may address only one issue; the inmate is to be specific regarding the substance of the issue; the inmate is to include the date, place, and personnel involved; and state "how the policy or incident affected the inmate submitting the form." (*Id.* at 5-6). The inmate is limited to the space provided on the form and may not attach additional pages. (*Id.* at 6). The Unit Level Grievance Form "shall be completed and submitted within 15 days after the occurrence of the incident." (*Id.* at 5). With respect to medical issues, the grievances are forwarded to the Health Services Administrator ("HSA"). (*Id.* at 9).

After receiving a decision on his Unit Level Grievance, a dissatisfied inmate may proceed to Step Two, the filing of a formal grievance. (ECF No. 58-1 at 8). The inmate does so by completing Step Two on the same Unit Level Grievance Form. (*Id*). The inmate is to state why he "considers the informal resolution unsuccessful." (*Id*). The inmate cannot raise new or additional issues or complaints. (*Id*. at 2, 8-9, 11).

An inmate has five working days to lodge an appeal to the appropriate Chief Deputy, Deputy, or Assistant Director. (ECF No. 58-1 at 11). If the grievance involves medical issues, the Step Two appeal goes to the Deputy Director for Health and Correctional Programs. (*Id.* at 12). "If the grievance appealed is a duplicate of one previously appealed by the inmate with regard to

the staff member named, the date of the incident, and the subject of the grievance," the duplicate will be returned to the inmate with an Attachment V on which it will be noted that it is a duplicate and the inmate will be provided the earlier grievance number. (*Id*).

Inmates are limited to submitting five Step One informal resolutions each seven-day period.[3] (ECF No. 58-1 at 13). Inmates are limited to submitting three Step Two formal grievances each seven-day period. (*Id*). Exceptions to these rules are made when an emergency exists. (*Id*).

Turning to Plaintiff's specific grievances, the Court notes that Defendants concede Plaintiff may proceed against all Defendants on his claim concerning the delay in taking him to be examined by an ophthalmologist, per grievance number OR-15-00397.[4] (ECF No. 57 at 2). Likewise, Defendants concede grievance numbers OR-17-00592 and OR-17-00976 are completely exhausted as to Nurse Robinson.[5]

However, Defendants argue that Plaintiff's claims raised in grievance number OR-16-01367, are barred because he did not fully exhaust his administrative remedies.[6] Plaintiff has attached to his Complaint grievance number OR-16-01367 concerning his request for eye glasses. Plaintiff does not mention the Defendants by name in the grievance. Although he does mention Dr. Vowell in his appeal, Defendants maintain the Deputy Director in his appeal decision did not address issues concerning Dr. Vowell.

Review of grievance number OR-16-01367 indicates Plaintiff completed Step One on

---

[3] The seven-day period runs from Saturday to Friday.
[4] This grievance is not among the exhibits provided to the Court. Accordingly, the Court relies on Defendants' description of the issues raised.
[5] These grievances are not among the exhibits provided to the Court. Accordingly, the Court relies on Defendants' descriptions of the issues raised.
[6] According to the declaration of Shelly Byers, a medical grievance coordinator with the ADC, Jones did not complete the ADC grievance process with respect to any medical grievance between January 8, 2015, and January 8, 2018. (ECF No. 58-3 at 2). Strangely, her declaration does not mention the grievance numbers involved in this case.

September 8, 2016 and Step Two on September 9, 2016. (ECF No. 1 at 11). However, the HSA found that the grievance was without merit. (ECF No. 1 at 1). Furthermore, the record reflects that Plaintiff appealed that decision, but that the reviewing official found that the appeal was without merit. Accordingly, it is evident that this grievance was fully exhausted. Furthermore, despite Defendants' protests to the contrary, it is clear the appeal decision both mentions Dr. Vowell and answers the question of whether Plaintiff is entitled to wear contacts in prison. Therefore, the Court finds that Defendants are not entitled to summary judgment as to this grievance for failure to exhaust and Plaintiff may proceed with his claims with respect to grievance number OR-16-01367.

### B. Fifteen Day Time Limit

Defendants argue that Plaintiff can only claim damages for the period extending from fifteen days prior to each grievance's submission date to the date the issue raised was resolved.[7] Defendants urge the Court to so hold and dismiss any claims stemming from different time periods.

Upon consideration, the Court declines to adopt the Defendants' interpretation. Defendants would have the Court take the requirement of the ADC's grievance procedure and turn it into a substantive limitation on both the inmate's ability to pursue his claim and his ability to recover damages. This the Court cannot do. *See e.g., Bailey v. Hobbs*, No. 5:11-cv-00031, 2012 WL 3041316, *6 (E.D. Ark. May 8, 2012), *report and recommendation adopted*, 2012 WL 3038856 (E.D. Ark. July 25, 2012)(rejecting the same argument); *see also Halfacre v. Correct*

---

[7] For example, grievance number OR-15-00397 was submitted on April 4, 2015. Defendants argue the earliest possible date Plaintiff "could be grieving" this issue is March 20, 2015—15 days prior to April 4, 2015. Plaintiff was seen at the JEI by an ophthalmologist on April 7, 2015. Thus, according to Defendants, all other claims stemming from a different time other than March 20, 2015, to April 7, 2015, should be dismissed in connection with OR-15-00397. OR-15-00397 is the only grievance for which Defendants set forth what they believe to be the applicable time period.

*Care Solutions*, No. 5:16-cv-00313, 2017 WL 1064024, \*3-4 (E.D. Ark. Feb. 24, 2017), *report and recommendation adopted*, 2017 WL 1064004 (E.D. Ark. March 20, 2017)(treating as not exhausted claims involving incidents occurring more than fifteen days prior to the grievance's filing date but declining to adopt the argument that Plaintiff's denial of dental care claim extended only until the time a single tooth was repaired). In this case, the Court notes that the ADC did not challenge the timeliness of the grievances when they were filed, nor were the reviews conducted limited to this fifteen-day period.

While the fifteen-day requirement in the ADC's grievance procedure works well in the context of a discrete act or occurrence such as an excessive force claim, its application to a continuing practice or condition such as the ongoing issues concerning the provision of eye care, would be problematic. Accordingly, the Court finds Defendants' argument on this issue unpersuasive.

## CONCLUSION

For the reasons stated, the Defendants' Motion for Partial Summary Judgment (ECF No. 57) should be and hereby is **DENIED**.

**IT IS SO ORDERED**, this 19th day of February, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge