IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

RICKY A. JONES                                                      PLAINTIFF

v.                                    Civil No. 6:18-cv-6030

DR. NANNETTE VOWELL;
NURSE RICHARD MORGAN;
NURSE GWENDOLYN HART; and
NURSE C. ROBINSON                                              DEFENDANTS

## ORDER

Before the Court is the Report and Recommendation filed October 22, 2019, by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. (ECF No. 97). Plaintiff Ricky A. Jones has filed objections. (ECF No. 103). Defendants Nannette Vowell, Richard Morgan, Gwendolyn Hart, and C. Robinson have also filed objections. (ECF No. 104). The Court finds the matter ripe for consideration. As discussed below, the Court will adopt the instant Report and Recommendation in all respects, other than its findings, conclusions, and recommendations regarding whether Plaintiff's fully exhausted claims fail for lack of causation.

## I. BACKGROUND

On March 29, 2018, Plaintiff, an inmate in the Ouachita River Correctional Unit of the Arkansas Department of Correction ("ORCU"), filed this case pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants violated his constitutional rights by exhibiting deliberate indifference to his serious medical needs. Judge Bryant's Report and Recommendation extensively sets out the factual background giving rise to Plaintiff's claims. (ECF No. 97, pp. 2-15). The Court will not repeat those facts at length in this order. In short, Plaintiff alleges that, upon his incarceration on December 8, 2014, ORCU staff took possession of his prescription contact lenses. Plaintiff alleges that, for roughly two and a half years and despite his repeated

requests, Defendants failed to provide him with adequate eyewear to treat his Marfan's syndrome.[1]

Consequently, Plaintiff alleges that his eyesight progressively deteriorated and he developed

glaucoma and subluxated lenses, ultimately requiring surgery on both eyes.

On March 15, 2019, Defendants filed a motion for partial summary judgment, arguing that

some of Plaintiff's claims should be dismissed without prejudice because he failed to exhaust his

administrative remedies as to those claims prior to filing this case.  (ECF No. 73).  Defendants also

argued that Plaintiff's recoverable damages for submitted grievances should be limited to a period

beginning fifteen days prior to each grievance's submission and ending on the date each grievance

was resolved.  On June 13, 2019, Defendants filed a separate, second motion for summary

judgment, arguing that Plaintiff's exhausted claims fail on the merits and should be dismissed with

prejudice.  (ECF No. 83).  On October 22, 2019, Judge Bryant issued the instant Report and

Recommendation, addressing Defendants' two summary judgment motions.

For the first summary judgment motion (ECF No. 73), Judge Bryant finds that Plaintiff

failed to exhaust his administrative remedies for all but four grievances he filed during the period

at issue.  Thus, Judge Bryant recommends that Defendants' motion for partial summary judgment

be granted as to Plaintiff's unexhausted grievances and that his claims related to those grievances

should be dismissed without prejudice.  Judge Bryant also found that Plaintiff exhausted his

administrative remedies for the following grievances:  (1) OR-15-00397 against all Defendants;

(2) OR-17-00592 against Defendant Robinson; (3) OR-17-00976 against Defendants Robinson

and Vowell; (4) and OR-16-01367 against Defendants Vowell and Morgan.  Judge Bryant

recommends that the motion for partial summary judgment be denied as to the above-listed

---

[1] "Marfan's syndrome . . . is a connective tissue disorder which can affect a number of body systems.  Marfan's syndrome patients typically have a number of specific features, including but not limited to:  1) a tall and slender build; 2) disproportionately long arms, legs, and fingers; 3) a breastbone that protrudes outward or dips inward; 4) a high, arched palate and crowded teeth; 5) heart murmurs; 6) blurred vision and/or nearsightedness; 7) an abnormally curved spine; and/or 7) flat feet, among others."  (ECF No. 84-4, pp. 1-2).

grievances, and that the motion be further denied to the extent that it asks the Court to limit Plaintiff's claims and the recovery of damages to a period beginning fifteen days prior to the filing of each grievance and ending on the date each grievance was resolved.

For the second summary judgment motion (ECF No. 83), Judge Bryant finds that Plaintiff failed to demonstrate a genuine dispute of material fact as to the viability of his official capacity claims and as to a claim asserted against Defendant Robinson in grievance OR-17-00592. Thus, Judge Bryant recommends that the motion be granted as to those claims and that they be dismissed with prejudice. Judge Bryant finds further that a genuine dispute of material fact exists as to Plaintiff's remaining claims and recommends that the motion be denied in all other respects.

On November 25, 2019, Plaintiff filed what are styled as "written objections," arguing that grievance OR-16-01515 should be "admitted" and that his official capacity claims should not be dismissed. On November 27, 2019, Defendants filed objections to the Report and Recommendation, arguing that the Court should grant Defendants' two summary judgment motions.

## II. DISCUSSION

The Court may designate a magistrate judge to hear pre- and post-trial matters and to submit to the Court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1). After conducting an appropriate review of the report and recommendation, the Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

"[T]he specific standard of review depends, in the first instance, upon whether or not a party has objected to portions of the report and recommendation." *Anderson v. Evangelical Lutheran Good Samaritan Soc'y*, 308 F. Supp. 3d 1011, 1015 (N.D. Iowa 2018). Generally,

"objections must be timely and specific" to trigger *de novo* review. *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). The Court applies a liberal construction when determining whether *pro se* objections are specific. *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995).

As previously stated, both Plaintiff and Defendants have filed objections. The Court will begin by addressing Plaintiff's objections. The Court will then take up Defendants' objections.

### A. Plaintiff's Objections

Plaintiff filed what he styles as "written objections," but that seem to actually address Defendants' two motions for summary judgment. He argues that grievance OR-16-01515 should be "admitted" because it shows that Defendants delayed in getting him medical treatment for his eyes. He also argues that his official capacity claims should not be dismissed because grievances OR-17-01367 and OR-17-00976 prove that Defendants violated their own policies and procedures, thereby depriving him of proper eyewear for over two years.

As previously stated, the Court must liberally construe *pro se* objections to determine whether they are specifically responsive to a Report and Recommendation. *Id.* In applying this liberal construction, the Court will review each of Plaintiff's objections even though they do not specifically reference the instant Report and Recommendation.

### 1. Exhaustion of Grievance OR-16-01515

In grievance OR-16-01515, Plaintiff complained that his Eighth Amendment rights were violated on September 29, 2016, when ORCU staff told him that he was leaving the facility for a medical trip, put him in a holding cell to await transportation, and then left him in the cell all day. (ECF No. 74-2, p. 5). This grievance was found to be without merit at both the unit level and on appeal.[2] (ECF No. 74, pp. 5-9). Defendants' motion for partial summary judgment argues that

---

[2] The ADC grievance process requires that a prisoner first submit an informal resolution. If the informal resolution is not resolved to the prisoner's satisfaction or is not responded to at all within a specified time frame, the prisoner may then submit a formal grievance. If the formal grievance is not resolved at the unit level to the prisoner's satisfaction

Plaintiff did not exhaust his administrative remedies as to grievance OR-16-01515, while Plaintiff argues that he did.

Judge Bryant did not make an explicit finding as to whether Plaintiff exhausted his administrative remedies as to grievance OR-16-01515. Instead, Judge Bryant declined to address the grievance, reasoning that it concerned issues falling outside the scope of Plaintiff's claims in this case. Plaintiff objects, arguing that the grievance should be "admitted" because it shows that Defendants delayed in getting him medical treatment for his eyes.

The Court expresses no opinion as to whether grievance OR-16-01515 concerns issues that fall outside the scope of Plaintiff's claims because, upon *de novo* review, the Court finds that Plaintiff did not exhaust his administrative remedies as to that grievance before filing suit. The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies[,] prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 599 U.S. 199, 218 (2007) (internal quotation marks omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"[I]n considering motions to dismiss for failure to exhaust . . . the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if

_____

or is not responded to at all within a specified time frame, the prisoner may then submit an appeal. Once a rejection or written decision is issued on the appeal, the grievance process is completed and the prisoner's remedies are exhausted. (ECF No. 74-1, pp. 5-13).

exhaustion has occurred." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). If an inmate has not exhausted his administrative remedies when he files his complaint, "dismissal is mandatory." *Id.* If "a trial court determines that a prisoner's claims are unexhausted, it is required to dismiss the case without prejudice—and it cannot proceed to reach the merits and dismiss the case, with prejudice." *Reed v. Anderson*, No. 5:11-cv-0111-DPM/JTR, 2011 WL 4709884, at *2 (E.D. Ark. Sept. 9, 2011) (citing *Barbee v. Corr. Med. Servs.*, 394 F. App'x. 337, 338 (8th Cir. 2010)).

In relevant part, the Arkansas Department of Correction's ("ADC") grievance policy requires inmates to submit grievances that "specifically name each individual involved for a proper investigation and response to be completed by the ADC." (ECF No. 74-1, p. 4-5). Plaintiff did not specifically name Defendants in grievance OR-16-01515. In fact, he did not name any individual as being involved in the allegations made in the grievance. By failing to specifically name Defendants, or anyone else, in grievance OR-16-01515, Plaintiff failed to exhaust his administrative remedies as to that grievance because the ADC was not asked to evaluate Defendants' conduct or involvement with respect to the alleged incident. *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Accordingly, Plaintiff's claims related to grievance OR-16-01515 must be dismissed without prejudice. *Reed*, 2011 WL 4709884, at *2 (stating that unexhausted claims must be dismissed without prejudice).

The Court reaches this conclusion for different reasons than those articulated in the Report and Recommendation. However, the Court nonetheless agrees with Judge Bryant's recommended outcome: that Defendants' motion for partial summary judgment should be granted insofar as it argues that Plaintiff's claims related to grievance OR-16-01515 should be dismissed without prejudice. Accordingly, the Court finds that Plaintiff's objections present no reason to depart from the Report and Recommendation on this issue.

### 2. Official Capacity Claims

In addressing Defendants' second summary judgment motion, Judge Bryant found that Plaintiff's official capacity claims failed as a matter of law and should be dismissed with prejudice. Specifically, Judge Bryant was unpersuaded by Plaintiff's argument that his official capacity claims should survive summary judgment because Defendants failed to follow their own internal policy. Judge Bryant reasoned that Plaintiff did not show that an unconstitutional policy or custom was the moving force behind the alleged constitutional violations and, thus, his official capacity claims should be dismissed. Plaintiff objects, arguing that grievances OR-16-01367 and OR-17-00976 prove that Defendants deprived him of healthcare for over two years, and that Defendants violated their internal policy in doing so.

To begin, it appears that Plaintiff argued to Judge Bryant that grievances OR-16-01367 and OR-17-00976 support his claims. (ECF No. 77, p.1). "Simply restating arguments and facts already presented to the Magistrate Judge does not constitute a viable objection to a report and recommendation." *Munt v. Larson*, No. 15-cv-0582 SRN/SER, 2015 WL 5673108, at *7 (D. Minn. Sept. 23, 2015). Thus, the Court believes that Plaintiff's objection could and should be overruled for merely being repetitive of an argument that Judge Bryant considered and rejected. However, even if the Court assumes *arguendo* that this is a viable objection, it will nonetheless be overruled for the following reasons.

Under section 1983, a defendant may be sued in either his individual or official capacity or both. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Accordingly, Plaintiff's official capacity claims are treated as claims against Defendants' employing governmental entity. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

An employing governmental entity "cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Defendants' liability under section 1983, a "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

To establish the existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). A custom conflicting with a written policy can support an official capacity claim. *Johnson v. Douglas Cnty. Med. Dept.*, 725 F.3d 825, 829 (8th Cir. 2013). However, a single deviation from a written policy does not establish a custom but, rather, to establish the existence of such a custom, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Id.* at 828. Under this standard, "multiple incidents involving a single plaintiff could establish a custom if some evidence indicates that the incidents occurred over a course of time sufficiently long to permit notice of, and then deliberate indifference to or tacit authorization of, the conduct by policymaking officials." *Id.*

Plaintiff does not argue that Defendants violated his constitutional rights pursuant to an unconstitutional policy. Rather, he argues that they ignored an unspecified policy, which is akin

to arguing that they acted pursuant to an unconstitutional custom. The Court agrees with Judge Bryant that Plaintiff has failed to put forth evidence of an unconstitutional custom that was the moving force behind Defendants' alleged constitutional violations.

As stated above, a custom conflicting with a written policy can support an official capacity claim. *Id.* at 829. However, Plaintiff's objections do not explain how grievances OR-16-01367 and OR-17-00976 support his official capacity claims. Presumably, Plaintiff's argument is his submission of those grievances on September 9, 2016, and June 9, 2017, respectively, shows that the alleged violations occurred for, at minimum, almost a year, which would demonstrate an ongoing unconstitutional custom. However, the responses to each grievance show that ORCU staff provided Plaintiff with eyeglasses, scheduled him for follow-up appointments at medical clinics, and were evaluating his need for surgery or other corrective care such as medical contact lenses. (ECF No. 74-2, pp. 10, 19).

Perhaps more importantly, grievances OR-16-01367 and OR-17-00976 establish, at best, only that Plaintiff complained that he was not receiving proper eyecare from September 9, 2016 through June 9, 2017. The grievances are not sworn or notarized and, thus, do not establish that Defendants indeed injured Plaintiff through a continuing, widespread, persistent pattern of unconstitutional misconduct, or that the ORCU employees who responded to the grievances were policymaking officials who were put on notice of such conduct and were either deliberately indifferent to or tacitly authorized the conduct. The responses to the unsworn grievances also indicated a willingness to correct a medical issue, as they state that Plaintiff had been scheduled for medical appointments and had been prescribed eyeglasses. Thus, the grievances themselves are insufficient to establish an unconstitutional custom. *See Garcia v. Ctny. of El Paso*, 79 F. App'x 667, 670 (5th Cir. 2003) (finding that grievances did not show a custom when the responses to the grievances indicated a willingness to correct the medical issue); *Nasious v. Robinson*, No.

CIV-08-cv-0262-CMAKMT, 2010 WL 1268135, at *7 (D. Colo. Feb. 17, 2010) (rejecting unsworn prison grievances offered as evidence of an unconstitutional custom), *report and recommendation adopted*, No. CIV-08-cv-0262-CMAKMT, 2010 WL 1268132 (D. Colo. Mar. 29, 2010), *aff'd in part, appeal dismissed in part*, 396 F. App'x 526 (10th Cir. 2010); *Wardleigh v. Slater*, No. 1:07-cv-108, 2010 WL 414367, at *1 (D. Utah Jan. 28, 2010) (same). Moreover, Plaintiff has pointed to no other summary judgment evidence demonstrating this, such as affidavits or other sworn testimony. *See Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996) (stating that the party resisting summary judgment must "designate specific facts creating a triable controversy").

Accordingly, the Court agrees with Judge Bryant that Plaintiff has pointed to no record evidence demonstrating: (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;" (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct;" and (3) that he "was injured by acts pursuant to the governmental entity's custom." *Johnson*, 725 F.3d at 828. Accordingly, Plaintiff's official capacity claims are subject to dismissal with prejudice.

### 3. Conclusion

For the above-stated reasons, the Court finds that Plaintiff's objections present no basis upon which to depart from Judge Bryant's recommendations. Accordingly, the Court will overrule Plaintiff's objections.

### B. Defendants' Objections

Defendants also filed objections to the instant Report and Recommendation. They argue that the Court should decline to adopt the Report and Recommendation in three respects. First, they argue that the Report and Recommendation made erroneous findings regarding the applicable

statute of limitations. Second, they argue that the Report and Recommendation improperly relied on evidence from outside the summary judgment record. Finally, they argue that the Report and Recommendation failed to consider certain evidence when deciding the merits of Plaintiff's exhausted claims. The Court will separately address each argument.

### 1. Statute of Limitations

The Report and Recommendation contains a brief discussion related to the statute of limitations. In a footnote, Judge Bryant noted that Plaintiff was booked into the ORCU on December 8, 2014, and that he filed this case on March 29, 2018. Judge Bryant then stated the well-established law that the applicable statute of limitations for section 1983 actions in Arkansas is three years. He stated further that a civil cause of action accrues when the plaintiff knows or had reason to know of the harm, and that a continuing violation may extend the accrual of a cause of action if certain circumstances are present. Judge Bryant concluded by noting that the issue of the statute of limitations was brought up in Plaintiff's deposition, but that the issue was not raised in Defendants' summary judgment motions.

Defendants object, first arguing that they raised the affirmative defense of the statute of limitations in both summary judgment motions, as well in other previously filed pleadings. Defendants also object to the extent that Judge Bryant applied the so-called "continuing-violation" doctrine to extend the applicable three-year statute of limitations and considered claims that accrued prior to March 29, 2015. Defendants argue that the Eighth Circuit has never adopted the continuing-violation doctrine for use in section 1983 cases and that, even if it had, the doctrine would not apply to the facts of this case. The Court will address each objection separately.

### a. Whether Defendants Raised the Issue of Statute of Limitations

Defendants object to Judge Bryant's statement that their summary judgment motions do not raise the issue of statute of limitations. They cite to portions of each summary judgment motion

that they contend raises that issue. The cited passage from Defendants' first summary judgment motion reads as follows: "Plaintiff lodged nine medical grievances in the three years prior to filing the instant lawsuit. This period of time tracks the three year statute of limitations brough pursuant to 42 U.S.C. § 1983." (ECF No. 75, pp. 1-2). Defendants' second summary judgment motion contains an identically worded passage. (ECF No. 85, p. 6).

To the extent that Defendants contend that Judge Bryant erred by stating that Defendants did not seek summary judgment based on a statute of limitations argument, the Court disagrees. The above-quoted passage does not seek dismissal of claims accruing prior to the three-year period before Plaintiff filed this case; it merely states that Plaintiff filed nine grievances during the three-year limitations period. Nowhere in Defendants' summary judgment motions do they request dismissal of claims based on a statute of limitations defense, and the Court declines to consider that argument if Defendants now invite the Court to do so. *Ridenour v. Boehringer Ingelheim Pharm., Inc.*, 679 F.3d 1062, 1067 (8th Cir. 2012) (providing that a party may not assert arguments, claims, or legal theories in objections to a magistrate judge's report and recommendation that were not first presented to the magistrate judge for consideration).

However, to the extent that Defendants contend that Judge Bryant erred merely by stating that Defendants' summary judgment motions do not make any reference to statutes of limitations, that much is true. Defendants' motions clearly reference the general three-year statute of limitations for section 1983 claims in Arkansas. However, this inaccuracy has no bearing on the remainder of the Report and Recommendation, so it is harmless error. Consequently, the Court finds that Defendants' objections should be overruled as to this point.

### b. Continuing-Violation Doctrine

Defendants further object to Judge Bryant's footnote regarding the applicable statute of limitations for this case, arguing that he appears to have applied the continuing-violation doctrine

to consider claims that arose prior to March 29, 2015, three years prior to the date Plaintiff filed this action. Defendants argue that the continuing-violation doctrine has not been adopted in the Eighth Circuit for use in section 1983 cases and, even if it had been, the facts of this case do not justify application of the doctrine. Thus, they argue that any of Plaintiffs' claims that arose prior to March 29, 2015 are time barred and the Court should decline to adopt the Report and Recommendation to the extent that it considers those claims.

There is no need to address the applicability of the continuing-violation doctrine because Defendants do not point the Court to any specific instance where Judge Bryant utilized that doctrine to consider claims that arose prior to March 29, 2015. Instead, they state only that he "appears" to have done so, with no further elaboration or specificity. "[G]eneral and conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations" do not trigger *de novo* review. *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994); *Meyer v. Haeg*, No. 15-cv-2564 (SRN/HB), 2016 WL 6916797, at *2 (D. Minn. Nov. 21, 2016). In the absence of any specifically challenged claims, the Court sees no clear error in Judge Bryant's Report and Recommendation on this issue. The Court could overrule Defendants' objections for this reason.

However, even if the Court looks closer, the Court sees no claims that accrued prior to March 29, 2015 that Judge Bryant recommended should survive summary judgment. Judge Bryant found that Plaintiff exhausted his administrative remedies as to four grievances and recommended that summary judgment should be denied as to Plaintiff's claims related to those four grievances. One of the grievances, OR-16-01367, was filed in late 2016, relating to alleged incidents occurring in 2016. (ECF No. 74-2, pp. 10-12). Two of the grievances, OR-17-00592 and OR-17-0976, were filed in 2017 and concern alleged incidents occurring in 2017. (ECF No. 74-2, pp. 16-23).

Obviously, Plaintiff's claims related to these grievances fall within the three-year period between March 29, 2015, and March 29, 2018, and Judge Bryant properly considered them.

That leaves grievance OR-15-00397, which Plaintiff filed on April 4, 2015. The grievance form does not specifically indicate when the alleged incident occurred. At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to Plaintiff, the nonmoving party. *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A reasonable inference could be drawn that the incident Plaintiff complained of in grievance OR-15-00397 occurred between March 29, 2015 and April 4, 2015. With the benefit of this inference, Plaintiff's claims related to grievance OR-15-00397 would have accrued within the three-year period between March 29, 2015, and March 29, 2018, and Judge Bryant would have properly considered them.

It is unclear why the Report and Recommendation included a rule statement from a non-binding jurisdiction regarding the continuing-violation doctrine. The Report and Recommendation does not invoke the doctrine in connection with any claim at issue, and other than one reference in a footnote, the doctrine is not mentioned again. As discussed above, it does not appear that any grievance which Judge Bryant deemed exhausted falls outside the three-year statute of limitations period for this case. Thus, the Court sees no mistake of fact or law justifying departure from the Report and Recommendation, and Defendants' objections will be overruled on this point.

### 2. Independent Court Research

Defendants object to the inclusion of three footnotes in the Report and Recommendation's background section. The footnotes read as follows:

> Marfan syndrome is a disorder that affects the connective tissue in many parts of the body. Connective tissue provides strength and flexibility to structures such as bones, ligaments, muscles, blood vessels, and heart valves. The signs and

14

symptoms of Marfan syndrome vary widely in severity, timing of onset, and rate of progression. Because connective tissue is found throughout the body, Marfan syndrome can affect many systems, often causing abnormalities in the heart, blood vessels, eyes, bones, and joints. The two primary features of Marfan syndrome are vision problems caused by a dislocated lens (ectopia lentis) in one or both eyes and defects in the large blood vessel that distributes blood from the heart to the rest of the body (the aorta)." https://ghr.nlm.nih.gov/condition/marfansyndrome (accessed October 2, 2019).

(ECF No. 97, p.1).

Visual acuity is the sharpness of vision, especially as tested with a Snellen chart. Normal visual acuity based on the Snellen chart is 20/20. Medical Dictionary for the Health Professions and Nursing © Farlex 2012. "If you have 20/200 visual acuity, the smallest letters you can identify from a distance of 20 feet are the size of the smallest letters a person with historically defined 'normal vision' can see from a much greater distance – 200 feet, in this case." https://www.allaboutvision.com/lowvision/legally-blind.htm (accessed October 9, 2019).

(ECF No. 97, p. 3).

C/d or cup-to-disc ratio is a measurement to assess the progression of glaucoma. https://www.hopkinsmedicine.org/wilmer/services/glaucoma/book/ch06s03.html (accessed October 9, 2019).

(ECF No. 97, p. 5).

Defendants argue that these footnotes were not based on any record evidence and that Judge Bryant independently conducted Internet research and relied on that research to fact-find and/or make conclusions of law. Defendants urge the Court to decline to adopt the Report and Recommendation to the extent that it relies on the Internet sources because it is the parties' responsibility to build the summary judgment record, not the Court's. In support of this argument, Defendants cite to a dissenting opinion from the Seventh Circuit that opines, in relevant part, that appellate court decisions should be based solely on the appellate record and not on any independent research conducted by the court. *Rowe v. Gibson*, 798 F.3d 622, 636 (7th Cir. 2015) (Hamilton, J., dissenting). Defendants argue that the logic in the *Rowe* dissent should apply here, and that Judge Bryant's reliance on independently researched Internet sources was inappropriate.

The Court finds this argument unpersuasive. Defendants cite no binding authority in support of their argument, and the Court is not bound by the Seventh Circuit's decision in *Rowe*. *United States v. Auginash*, 266 F.3d 781, 784 (8th Cir. 2001). Moreover, the Court is unaware of any Eighth Circuit authority addressing this issue.

Even if the Court assumes *arguendo* that Defendants' position would be the prevailing view in the Eighth Circuit, *Rowe*'s dissent is nonetheless distinguishable from this case. Putting aside the obvious distinction that *Rowe* concerned, *inter alia*, whether an appellate court may base its decision on sources not contained in the appellate record, Defendants cite to no specific examples of where Judge Bryant based his legal analysis or recommendations on any independently researched Internet sources. Instead, Defendants only make the conclusory assertion that Judge Bryant did so. The Court has reviewed the Report and Recommendation and can find no instance where Judge Bryant's analysis or recommended disposition relies on information from the challenged footnotes.

These footnotes clearly exist for the reader's benefit because they define medical terms used throughout the Report and Recommendation's background section. *Rowe*'s majority opinion noted that this is an allowable practice, acknowledging "the need to distinguish between judicial web searches for mere background information that will help the judges and the readers of their opinions understand the case . . . and web searches for facts normally determined by the factfinder after an adversary procedure that produces a district court or administrative record." *Rowe*, 798 F.3d at 628. The Court believes that the challenged footnotes fall into the former category, not the latter. To be sure, the best practice would be to avoid inserting judicially researched sources into opinions, whenever possible. However, the Court finds no error in Judge Bryant's inclusion of the challenged footnotes and, should any error exist, it is harmless because the Report and

Recommendation does not base its legal analysis or conclusions on that information. Consequently, this objection will be overruled.

### 3. Unconsidered Facts

Defendants' second summary judgment motion argues for dismissal of all exhausted claims because the summary judgment evidence shows that Defendants were not deliberately indifferent to Plaintiff's serious medical needs. Judge Bryant found that argument unavailing. Specifically, Judge Bryant found that Plaintiff's need for medical attention was obvious to a layperson because his vision was impaired to the extent that it affected his daily living. Judge Bryant also found that the record demonstrates that Defendants were aware of Plaintiff's vision problems and that they did not provide him with either prescription contact lenses or eyeglasses. Thus, Judge Bryant concluded that a genuine issue of material fact exists as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs and, furthermore, that Defendants are not entitled to qualified immunity on those claims.

Defendants object, arguing that the Report and Recommendation failed to consider certain unrebutted summary judgment evidence. They argue that they offered the affidavit of their expert witness, Dr. Jeffery Stieve, who opined that Plaintiff's development of glaucoma and subluxated lenses was unrelated to whether he used prescription contact lenses during his incarceration. (ECF No. 84-4, pp. 2-3). Dr. Stieve also opined that Defendants provided appropriate medical care and treatment to Plaintiff. Defendants argue that Plaintiff has offered no evidence, other than his own subjective belief that he received inadequate medical treatment, to rebut Dr. Stieve's expert testimony. Thus, they argue that Plaintiff has failed to establish causation or, in other words, that the lack of prescription contact lenses harmed him. Defendants also argue that the Report and Recommendation did not consider evidence showing that Plaintiff purchased reader eyeglasses from the prison commissary and had them in his possession at all relevant times, and that he was

17

able to successfully complete classes taught at the prison and fill out various forms during the relevant time period, which demonstrates that he was able to ably engage in daily activities. Consequently, Defendants argue it was not objectively apparent to any reasonable person that Plaintiff was unable to see due to a lack of prescription corrective eyewear.

The Eighth Amendment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate-indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (alterations in original). To show that he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). To satisfy the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (alteration in original). An "inmate must clear a substantial evidentiary threshold to show the prison's medical

staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.*

The "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of a delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). However, a plaintiff need not submit verifying medical evidence when the need for medical attention was obvious to a layperson. *See Schaub*, 638 F.3d at 919.

In this case, Plaintiff alleges that Defendants intentionally delayed and denied his access to prescribed medical treatment, his contact lenses. Thus, he must submit verifying medical evidence to measure the effect of the delay unless his need for medical attention was obvious to a layperson. *Id.* Judge Bryant found that Plaintiff's need for medical attention related to his eyesight was obvious to a layperson and, consequently, excused Plaintiff's failure to submit verifying medical evidence. Respectfully, the Court disagrees for the following reasons.

"Where the complaint involves treatment of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation." *Alberson v. Norris*, 458 F.3d 762, 765-66 (8th Cir. 2006). The Court finds the Eighth Circuit's reasoning in *Robinson v. Hager*, 292 F.3d 560 (8th Cir. 2002), to be instructive. In *Robinson*, a prisoner suffered a stroke after prison officials failed to provide him with blood pressure medication, and the prisoner subsequently filed suit, alleging deliberate indifference. *Id.* at 562-63. The *Robinson* court acknowledged that "[a] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs. However, when the injury is a 'sophisticated' one, i.e., requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within the realm of lay understanding and must be established through expert testimony." *Id.* at 564 (quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000)). Consequently,

*Robinson* held that "although a person suffering from a stroke may exhibit visible symptoms, the stroke itself is a sophisticated injury which could be caused by numerous factors other than lack of medication. Therefore, expert medical testimony is needed to prove causation." *Id.*

The Court believes that this case is similar. Marfan's syndrome, along with glaucoma and subluxated lenses, are sophisticated medical conditions. *See Awnings v. Fullerton*, 912 F.3d 1089, 1098 (8th Cir. 2019) (stating that alleged no-visible injuries requiring sophisticated medical tools to diagnose "are not within the range of common experience where inferences may be made"). This is not a case in which a singular event caused the sudden onset of an injury. Although Plaintiff exhibited visible symptoms from the glaucoma and subluxated lenses in the form of worsening eyesight, his glaucoma and subluxated lenses nonetheless required sophisticated medical tools to diagnose. Thus, these sophisticated medical conditions were not within the realm of lay understanding. *Id.* Moreover, a determination of whether Defendants "should have provided different treatment for [Plaintiff] . . . or indeed whether any treatment at all could have alleviated his suffering or arrested the progress of the disease, is not within the realm of lay understanding." *Alberson*, 458 F.3d at 766. Thus, to survive summary judgment, Plaintiff must submit verifying medical evidence that Defendants' alleged inaction adversely impacted his prognosis.

Plaintiff failed to do so. The only medical evidence in the record on this issue is Dr. Stieve's affidavit, which indicates that Plaintiff's development of glaucoma and subluxated lenses was unrelated to whether he used prescription contact lenses while incarcerated, and that Defendants provided him appropriate medical care and treatment. Plaintiff has pointed to no probative medical evidence showing that his lack of prescription eyewear, and not some other factor, caused his glaucoma and subluxated lenses. *See Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) (affirming district court's grant of summary judgment where a prisoner offered no verifying medical evidence that his eye damage was caused by the prison's failure to provide him

with prescribed sunglasses following eye surgery). Plaintiff's failure to produce expert testimony or any other verifying medical evidence is fatal to his deliberate indifference claims as a matter of law. *Id.*

Defendants' objections will be sustained on this issue and the Court will depart from the Report and Recommendation regarding Plaintiff's failure to establish causation.[3] Consequently, Defendants' second summary judgment motion (ECF No. 83) will be granted and Plaintiff's exhausted claims will be dismissed.[4]

### 4. Conclusion

In sum, the Court finds that Defendants' objections should be sustained to the extent that they argue that Plaintiff's exhausted claims fail as a matter of law and should be dismissed for lack of causation. Defendants' remaining objections present no basis for departing from the Report and Recommendation and will be overruled.

## III. CONCLUSION

For the above-stated reasons and upon *de novo* review, the Court overrules Plaintiffs' objections (ECF No. 103) in full and Defendants' objections (ECF No. 104) in part. Defendants' objections are sustained to the extent that they argue Plaintiffs' exhausted claims should be dismissed for lack of causation.

Accordingly, the Court adopts the instant Report and Recommendation (ECF No. 97) in all respects, other than its findings, conclusions, and recommendations regarding whether Plaintiff's exhausted claims fail for lack of causation. Defendants' motion for partial summary

---

[3] In light of this finding, the Court need not address the remainder of the arguments related to this objection.

[4] The dismissal of Plaintiff's remaining claims further supports the Court's above findings regarding the dismissal of his official capacity claims. Where, like in this case, no defendant is found individually liable on an underlying substantive claim, the employing governmental entity cannot be held liable under section 1983. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007).

judgment (ECF No. 73) is hereby **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims related to any grievance discussed in the Report and Recommendation other than OR-15-00397;  OR-17-00592;  OR-17-00976;  and  OR-16-01367  are  **DISMISSED WITHOUT PREJUDICE**.  Defendants' motion for summary judgment (ECF No. 83) is hereby **GRANTED**, and Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE**.

   **IT IS SO ORDERED**, this 17th day of January, 2020.

         /s/ Susan O. Hickey   
         Susan O. Hickey
         Chief United States District Judge